UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALEX BENJAMIN MCQUIN,

                Plaintiff,

v.

M. NURKALA et al.,

                Defendants.

_____/

Case No. 2:25-cv-18

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following AMF officials: Resident Unit Manager/Assistant Deputy Warden M. Nurkala, Prison Counselor/Assistant Resident Unit Supervisor Unknown Stromer, Grievance Coordinator P. Mayo, Prison Counselor/Assistant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Resident Unit Supervisor T. Wilson, and Resident Unit Manager T. Perttu. (Compl., ECF No. 1, PageID.3–4.)

In Plaintiff's complaint, he alleges that on October 5, 2024, he learned that Defendant Nurkala had "disclosed information" "about [Plaintiff's] sexuality" to other inmates, including gang members, which "caused the Plaintiff's wellbeing to be endangered."[2] (*Id.*, PageID.8.) Plaintiff states that he "didn't come out openly and say he was a homosexual," and Defendant Nurkala "was the only person who knew said information." (*Id.*, PageID.11.) Plaintiff claims that, at an unspecified time, Defendant Nurkala also "made statements to an alleged gang that [Plaintiff] wrote kites on them." (*Id.*, PageID.16.) At some point on October 5, 2024, Plaintiff "assaulted an alleged member of a gang from his tray slot due to threats and harassment about his sexuality." (*Id.*, PageID.8.) Thereafter, Plaintiff was taken to temporary segregation. (*Id.*) Upon arrival in temporary segregation, Plaintiff requested a grievance, but a non-party correctional officer told Plaintiff "no." (*Id.*)

Subsequently, on October 18, 2024, Plaintiff wrote a grievance about the October 5, 2024, matter and submitted it to Defendant Stromer. (*Id.*, PageID.9.) Plaintiff claims that Defendant Stromer "violated the code of privacy of the grievance handling process," so Plaintiff submitted a second grievance. (*Id.*) Plaintiff also submitted a kite to Defendant Mayo, the grievance coordinator, and Mayo told Plaintiff that Mayo never received a grievance from Defendant Stromer. (*Id.*) After learning this, Plaintiff submitted a grievance regarding Defendant Stromer's inaction with respect to Plaintiff's original grievance. (*Id.*) Plaintiff claims that Defendant Mayo "failed to properly investigate claims/grievance[s] entering his office." (*Id.*, PageID.11.)

---

[2] In this opinion, the Court corrects the capitalization, spelling, and punctuation in quotations from Plaintiff's complaint.

At an unspecified time, "Plaintiff was moved from temporary segregation to administrative segregation, which is controlled by [Defendant] Perttu and [Defendant] Wilson." (*Id.*, PageID.10.) At some point while Plaintiff was housed in administrative segregation, Plaintiff received a response to his grievance regarding Defendant Stromer's inaction, in which Defendants Perttu and Wilson said that they had interviewed Defendant Stromer. (*Id.*) Plaintiff asked Defendant Wilson why Wilson had not interviewed Plaintiff, and Wilson stated: "we know he lied but we believe him over you any day." (*Id.*) Plaintiff claims that, while he was housed in segregation, he was "deprived . . . of [unspecified] property." (*Id.*, PageID.12.) Plaintiff also claims that Defendants Perttu and Wilson "retaliated against the Plaintiff; they allowed the Plaintiff to see them give multiple prisoner[s] their personal television[s] to cause the Plaintiff mental anguish and mental deterioration." (*Id.*, PageID.17.)

Additionally, at an unspecified time, Plaintiff states that "out of mental anguish" he took his "upper slot [hostage] and asked for the shift supervisor." (*Id.*) Plaintiff alleges that "[b]oth Defendant(s) acted under state color and were unapologetically striking to get back at the Plaintiff . . . ." (*Id.*) Plaintiff claims that the actions of Defendants "were done out of maliciously and sadistically intent," and "they have harassed the Plaintiff both generally and sexually." (*Id.*, PageID.11.) Plaintiff also claims that Defendants "Wilson and Perttu were physically, verbally, and mentally abusive to the Plaintiff." (*Id.*, PageID.19.)

Further, Plaintiff claims that "mental health is denying the Plaintiff services due to the nature written in complaint." (*Id.*, PageID.12 (phrasing in original retained).) Plaintiff states that he "fears for his life at [AMF]," and "he only feels safe in protection." (*Id.*, PageID.11.) Plaintiff has asked "for protection for more than 90 days and ha[s] been denied." (*Id.*, PageID.24.)

Additionally, Plaintiff claims that he "spent several months in segregation out of fear of being stabbed by . . . Defendant[] Unknown M. Nurkala's boyfriend, who happens to be a prisoner at the same facility." (*Id.*, PageID.18.) Plaintiff also claims that "the Defendants have sent several" non-party correctional officers "to harass the Plaintiff's food[ and] sexual preference." (*Id.*) Plaintiff states that "all these claims have been filed on grievances and [were] unanswered." (*Id.*) Plaintiff also states that Defendants Perttu, Wilson, and Mayo "all under state color were malicious in action; retaliated against the Plaintiff and his food." (*Id.*, PageID.19.) Further, Plaintiff states that "for the first 3 months in segregation," he "was unable to contact family and friends" "because Defendant(s) had administration take his phone under false pretenses." (*Id.*, PageID.18.) Then, when Plaintiff was permitted to use the phone, he was "only able to make one call." (*Id.*)

At an unspecified time, Plaintiff sent kites "to medical about troubles using the restroom and nothing has been done about it." (*Id.*, PageID.19.) Plaintiff claims that "Defendant Mayo has been unrespons[ive] to any and all attempts to resolve this issue," and "they have since changed the grievance coordinator to Basil and the unrespons[ive] behavior ha[s] continued." (*Id.*) Plaintiff also claims that at an unspecified time, three non-party correctional officers threatened his life. (*Id.*, PageID.23.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.*, PageID.12.) Additionally, Plaintiff appears to be bringing state law claims against Defendants. (*See id.*, PageID.5.) Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.12–14, 19–20.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

7

A.      **Claims Regarding Plaintiff's Use of the Grievance Procedure**

Plaintiff presents various allegations against Defendants Stromer and Mayo regarding Plaintiff's use of the grievance procedure and these Defendants' actions, or inaction, related to Plaintiff's grievances. (*See* Compl., ECF No. 1, PageID.9, 11, 19.) Plaintiff also faults Defendants Perttu and Wilson for their inadequate response to Plaintiff's grievance against Defendant Stromer. (*See id.*, PageID.10.) The Court construes Plaintiff's complaint to raise claims under the First and Fourteenth Amendments regarding Plaintiff's use of the grievance procedure.

As an initial matter, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process or inadequate responses to Plaintiff's grievances, did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the

right to petition protects only the right to address government; the government may refuse to listen or respond). Defendants' actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Furthermore, Section 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). To the extent that Plaintiff seeks to hold Defendants liable due to their supervisory positions, he fails to state such a claim. Government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based

upon the mere failure to act. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)).

Here, Plaintiff fails to allege any facts showing that Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Conclusory allegations of supervisory responsibility are insufficient to show that Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Accordingly, Plaintiff's claims against Defendants regarding their responses, or lack thereof, to Plaintiff's grievances will be dismissed for failure to state a claim.

### B.    First Amendment Retaliation Claims

Plaintiff claims that Defendants violated his First Amendment rights by retaliating against him. (*See* Compl., ECF No. 1, PageID.5.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing several grievances, which is sufficient to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that, at an unspecified time, Defendants Perttu and Wilson "retaliated against the Plaintiff; they allowed the Plaintiff to see them give multiple prisoner[s] their personal television[s] to cause the Plaintiff mental anguish and mental deterioration." (Compl., ECF No. 1, PageID.17.) Additionally, without providing any specific date, or dates, Plaintiff claims that

11

Defendants Perttu, Wilson, and Mayo "all under state color were malicious in action; retaliated against the Plaintiff and his food." (*Id.*, PageID.19.)

Even assuming, without deciding, that Plaintiff's vague allegations regarding seeing other prisoners receive their personal televisions when Plaintiff, apparently, did not have his television, and regarding unspecified retaliation "against the Plaintiff and his food" constituted adverse actions, Plaintiff's retaliation claims fail at the third step. Plaintiff's allegations of retaliatory action are entirely conclusory. Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations even to suggest that the alleged adverse actions were motivated by the protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under Section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, any intended First Amendment retaliation claims against Defendants will be dismissed for failure to state a claim.

### C.    Eighth Amendment Claims

#### 1.    Failure-to-Protect Claim—Defendant Nurkala

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468

U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

In this action, Plaintiff alleges that on October 5, 2024, he learned that Defendant Nurkala had "disclosed information" "about [Plaintiff's] sexuality" to other inmates, including gang

13

members, which "caused the Plaintiff's wellbeing to be endangered." (Compl., ECF No. 1, PageID.8.) Plaintiff states that he "didn't come out openly and say he was a homosexual," and Defendant Nurkala "was the only person who knew said information." (*Id.*, PageID.11.) Additionally, Plaintiff claims that at an unspecified time, Defendant Nurkala "made statements to an alleged gang that [Plaintiff] wrote kites on them." (*Id.*, PageID.16.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, although Plaintiff has by no means proven his Eighth Amendment failure-to-protect claim against Defendant Nurkala, the Court will not dismiss this claim on initial review.

### 2.    Allegations against Non-Parties and Unspecified Defendants

Plaintiff presents the following allegations against non-parties or against unspecified Defendants, all of which could be construed as intended Eighth Amendment claims: (i) the actions of Defendants "were done out of maliciously and sadistically intent," and "they have harassed the Plaintiff both generally and sexually" (*id.*, PageID.11); (ii) at an unspecified time, Plaintiff "out of mental anguish" took his "upper slot [hostage] and asked for the shift supervisor;" and, "both Defendant(s) acted under state color and were unapologetically striking to get back at the Plaintiff . . . " (*id.*, PageID.17); (iii) "mental health is denying the Plaintiff services . . ." (*id.*, PageID.12); (iv) Plaintiff "fears for his life at [AMF]," and "he only feels safe in protection" (*id.*, PageID.11), and Plaintiff has asked "for protection for more than 90 days and ha[s] been denied" (*id.*, PageID.24); (v) Plaintiff "spent several months in segregation out of fear of being stabbed by . . . Defendant[] Unknown M. Nurkala's boyfriend, who happens to be a prisoner at the same facility" (*id.*, PageID.18); (vi) "the Defendants have sent several" non-party correctional officers "to harass the Plaintiff's food[ and] sexual preference" (*id.*); (vii) "for the first 3 months in segregation," Plaintiff "was unable to contact family and friends" "because Defendant(s) had administration take

his phone under false pretenses," and when Plaintiff was permitted to use the phone, he was "only able to make one call" (*id.*, PageID.18); (viii) at an unspecified time, Plaintiff sent kites "to medical about troubles using the restroom and nothing has been done about it" (*id.*, PageID.19); and, (ix) at an unspecified time, three non-party correctional officers threatened Plaintiff's life. (*id.*, PageID.23).

As an initial matter, with respect to Plaintiff's reference to the actions of non-parties—such as the non-party correctional officers, "mental health" and "medical," and the unnamed inmate, who is allegedly Defendant Nurkala's boyfriend—the Court notes that these individuals are not identified as Defendants in either the case caption of the complaint or the section of the complaint where Plaintiff lists the Defendants in this suit. (*See id.*, PageID.1, 3–4, 7.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals or entities discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.[3]

---

[3] The Court notes that with respect to the unnamed inmate, who is allegedly Defendant Nurkala's boyfriend, although Plaintiff claims that he "spent several months in segregation out of fear of being stabbed by" this inmate, Plaintiff alleges no facts to suggest that Defendant Nurkala had any

Moreover, as to Plaintiff's references to "Defendants," "Defendant(s)," and "they," "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Here, Plaintiff's general references to "Defendants," "Defendant(s)," and "they" are insufficient to show that any of the named Defendants were personally involved in the above-listed alleged violations of Plaintiff's constitutional rights.

Accordingly, all intended claims against non-parties and unspecified Defendants will be dismissed for failure to state a claim.

### 3.    Harassment Claims

Plaintiff alleges in a conclusory and vague manner that Defendants "Wilson and Perttu were physically, verbally, and mentally abusive to the Plaintiff." (Compl., ECF No. 1, PageID.19.) Plaintiff presents no facts about when these actions occurred and about what specific actions were taken by Defendants Wilson and Perttu. Indeed, Plaintiff does not present *any facts* to support this

---

involvement in this matter. (Compl., ECF No. 1, PageID.18.) That is, Plaintiff does not allege that Defendant Nurkala directed Nurkala's boyfriend to take any action against Plaintiff. (*See generally id.*) Indeed, besides alleging that Plaintiff feared this inmate might stab him, Plaintiff alleges no further facts about why Plaintiff feared this action or whether Plaintiff informed anyone, let alone Defendants, about this matter. Without additional supporting factual allegations explaining his conclusory allegation, Plaintiff appears to be asking the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

conclusory and vague allegation. For this reason alone, Plaintiff's vague harassment claims can be dismissed for failure to state a claim.

Moreover, with respect to Plaintiff's allegation about verbal harassment, although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Without specific allegations about the exact nature of the other alleged harassment, Plaintiff fails to state a claim upon which relief may be granted.

Accordingly, Plaintiff's Eighth Amendment claims regarding unspecified harassment will be dismissed.

### D.    Fourteenth Amendment Due Process Claims

#### 1.    Procedural Due Process Claims Regarding the Deprivation of Property

Plaintiff claims that Defendants Perttu and Wilson "allowed the Plaintiff to see them give multiple prisoner[s] their personal television[s]" when Plaintiff, apparently, did not have his television. (Compl., ECF No. 1, PageID.17.) Plaintiff also vaguely references being "deprived . . . of [unspecified] property" while he was housed in segregation. (*Id.*, PageID.12.) The Court construes these allegations to raise procedural due process claims regarding the deprivation of Plaintiff's property. However, as explained below, these claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

## 2. Substantive Due Process Claims

Plaintiff references the Fourteenth Amendment in his complaint, and to the extent that Plaintiff intended to raise a substantive due process claim regarding the events in the complaint, as explained below, he fails to state such a claim.

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v.*

18

*Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of suggesting the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment is the applicable constitutional protection for Plaintiff's retaliation claims, and the Eighth Amendment is the applicable constitutional protection for Plaintiff's deliberate indifference claims.

Accordingly, for the foregoing reasons, any intended Fourteenth Amendment substantive due process claims will be dismissed.

19

### E.    State Law Claims

In the "introduction" section of his complaint, Plaintiff implies that in addition to his federal claims, he is bringing state law claims. (*See, e.g.*, Compl., ECF No. 1, PageID.5.)

As an initial matter, claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under Section 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Stromer, Mayo, Wilson, and Perttu will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Because Plaintiff continues to have a pending federal claim against Defendant Nurkala, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Nurkala.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by PLRA, the Court determines that Plaintiff's federal claims against Defendants Stromer, Mayo, Wilson, and Perttu will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against

Defendants Stromer, Mayo, Wilson, and Perttu will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, all of Plaintiff's federal claims against remaining Defendant Nurkala *except for* Plaintiff's Eighth Amendment failure-to-protect claim. Plaintiff's Eighth Amendment failure-to-protect claim and state law claims against Defendant Nurkala remain in the case.

An order consistent with this opinion will be entered.


Dated:   March 27, 2025                         /s/ Sally J. Berens
                                            SALLY J. BERENS
                                            United States Magistrate Judge