UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALEX BENJAMIN McQUIN #863639,

        Plaintiff,                                     Hon. Hala Y. Jarbou

v.                                                     Case No. 2:25-cv-18

MARSHA NURKALA, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendant Nurkala's Motion for Summary Judgment raising the affirmative defense of failure to exhaust administrative remedies. (ECF No. 15.) Plaintiff has filed a response and Defendant has replied. (ECF Nos. 20 and 21.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendant's motion be **DENIED**.

**I.   Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on January 18, 2025,[1] against several MDOC employees based on events that occurred at the Baraga Correctional Facility (AMF) in October 2024. (ECF No. 1.) Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c),

---

[1] Pursuant to the "mailbox rule" applicable to incarcerated individuals when they file claims brought under Section 1983, *see Aldridge v. Gill*, 24 F. App'x 428, 429 (6th Cir. 2001) (citing *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995)), a prisoner's complaint is deemed filed on the date it is signed and deposited in the prison mail system. Plaintiff signed his complaint on January 18, 2025.

1

the Court allowed only his Eighth Amendment failure-to-protect claim against Defendant Nurkala to proceed. (ECF No. 5 at PageID.57–58.)

The Court previously summarized Plaintiff's allegations against Defendant Nurkala as follows:

> In Plaintiff's complaint, he alleges that on October 5, 2024, he learned that Defendant Nurkala had "disclosed information" "about [Plaintiff's] sexuality" to other inmates, including gang members, which "caused the Plaintiff's wellbeing to be endangered." (*Id.*, PageID.8.) Plaintiff states that he "didn't come out openly and say he was a homosexual," and Defendant Nurkala "was the only person who knew said information." (*Id.*, PageID.11.) Plaintiff claims that, at an unspecified time, Defendant Nurkala also "made statements to an alleged gang that [Plaintiff] wrote kites on them." (*Id.*, PageID.16.) At some point on October 5, 2024, Plaintiff "assaulted an alleged member of a gang from his tray slot due to threats and harassment about his sexuality." (*Id.*, PageID.8.) Thereafter, Plaintiff was taken to temporary segregation. (*Id.*) Upon arrival in temporary segregation, Plaintiff requested a grievance, but a non-party correctional officer told Plaintiff "no." (*Id.*)

(*Id.* at PageID.41.) Plaintiff alleges that he filed a grievance about the issue on October 21, 2024, when he gave it to Prison Counselor (PC) Stromer. (ECF No. 1 at PageID.8–9.)

Defendant Nurkala now seeks summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies against her.

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion,"

3

defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond their control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ W (effective 09/25/2023). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issue asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ JJ. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ NN. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

4

In support of her motion, Defendant Nurkala submits a Step III Grievance Report for Plaintiff dated March 31, 2025, which shows the grievances arising out of AMF that Plaintiff filed at Step I beginning October 5, 2024, and exhausted through Step III. (ECF No. 16-3.) The Step III Report shows that Plaintiff pursued seven grievances through Step III, five of which were filed at Step I between the October 5, 2024 incident and the date Plaintiff filed his complaint on January 18, 2025 (Grievances AMF-25-01-0123-09d, AMF-25-01-0096-17i, AMF-25-01-0105-28c, AMF-24-12-1594-09e, and AMF-24-12-1496-11b). (*Id.* at PageID.115–16.) None of these grievances had been exhausted through Step III at the time Plaintiff filed his complaint. (*Id.*) In addition, Defendants submit a Grievance Summary Report for Plaintiff, which is generated from a database that tracks all of the Step I and II grievances Plaintiff filed at AMF. (ECF No. 16-4.) This report shows that Plaintiff filed two additional Step I grievances within this period, AMF-24-10-1306-17z and AMF-24-12-1542-20e, which he did not appeal to Step II. (*Id.*) Defendants contend that these exhibits demonstrate two things. First, they demonstrate that the grievance process was available to Plaintiff between the date of the incident and the date Plaintiff filed his complaint. Defendants add that neither of the Step I grievances shown on the Grievance Summary Report that Plaintiff failed to pursue through Steps II and III could have exhausted his claim because they did not name or identify Defendant Nurkala. Second, Defendants note that Plaintiff had not exhausted any claims arising on or after October 5, 2024, through Step III prior to filing his complaint in this action because the five Step III grievances shown on the Step III report were not exhausted until after Plaintiff filed his complaint in this action.

Plaintiff essentially responds that the grievance process was unavailable to him. In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court observed that a grievance process is unavailable where, among other things, "it operates as a simple dead end—with officers unable or consistently

5

unwilling to provide any relief to aggrieved inmates." *Id.* at 643. The Court noted that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also id.* at 644 n.3. Plaintiff asserts that Defendant Nurkala "tampered with evidence with her co-worker Unknown PC Stromer." (ECF No. 20 at PageID.26.) He further contends that Defendant Nurkala submitted evidence in support of her motion that supports his allegation that she and PC Stromer interfered with his grievance. Specifically, Plaintiff claims that his October 21, 2024 Grievance shown in Defendant Nurkala's Exhibit 3[2] (PageID.16-4 at PageID.119) pertaining to PC Stromer, in which Plaintiff alleges that Stromer read Plaintiff's grievance to another prisoner, refers to the grievance PC Stomer and Defendant Nurkala claim was never received. (ECF No. 20 at PageID.126.) Plaintiff appears to argue that this grievance, AMF-24-10-1306-17z, concerned his claim against Defendant Nurkala. In his complaint, Plaintiff alleges that he wrote a grievance on October 18, 2024, and gave it to PC Stromer on October 21, 2024. Plaintiff alleges that he wrote kites to Grievance Coordinator P. Mayo requesting a grievance identifier for his grievance, but Mayo said that he never received a grievance from PC Stromer. (ECF No. 1 at PageID.9.) In addition to his complaint allegations, Plaintiff points to a declaration he submitted in support of his complaint, in which he affirms that "all of his words [in his complaint] are truthful." (*Id.* at PageID.22.) In this declaration, Plaintiff states, "[w]hen I filed the grievance PC Stromer threw it out and said he never received it. I have since resubmitted it for proof." (*Id.* at PageID.23.) In spite of this statement, there is no indication that Plaintiff has resubmitted the allegedly discarded grievance.

---

[2] Plaintiff refers to "Page 3 of [Nurkala's] Exhibit 2" (ECF No. 20 at PageID.126), but it appears that he intended to refer to Page 3 of Nurkala's Exhibit 3.

6

Defendant Nurkala contends that Plaintiff fails to create a genuine issue of material fact as to whether the grievance process was unavailable to Plaintiff based on PC Stromer's actions as to his claimed grievance against Defendant Nurkala. First, she contends that Plaintiff's declaration is "entirely conclusory" and fails to provide concrete facts that suffice to create a genuine issue of material fact. (ECF No. 21 at PageID.130–31.) Defendant Nurkala also contends that the declaration does not contain specific allegations as to what she did. (*Id.* at PageID.131.) As to the complaint, Defendant Nurkala concedes that it does contain specific allegations against her, but it is not properly verified because it does not comply with 28 U.S.C. § 1746. (*Id.* at PageID.131–32.)

While I agree with Defendant Nurkala that Plaintiff's complaint, itself, cannot function as evidence pursuant to Section 1746 because the verification is not made under penalty of perjury and is made "to the best of my knowledge, information, and belief," (ECF No. 1 at PageID.20), the declaration, which Defendant Nurkala concedes complies with the statute, together with the complaint, present enough factual matter to create a genuine issue as to whether PC Stromer interfered with Plaintiff's access to the grievance process. As noted, Plaintiff's declaration verifies that his complaint allegations are all truthful, and he reiterates his allegation that PC Stromer threw out his grievance and said he never received it. (*Id.* at PageID.22–23.) These assertions suffice to defeat Defendant Nurkala's motion for summary judgment.

## IV.   Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendant Nurkala's motion for summary judgment regarding exhaustion. (ECF No. 15.) I further recommend that the Court order that Defendant Nurkala may move for a bench trial on her exhaustion defense in accordance with *Lee v. Willey*, 789 F.3d 673 (6th Cir. 2015), and that failure to do so within the time set by the Court will waive the defense.

7

Dated: October 14, 2025 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).